UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| THAYER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00423-JAW |
| | ) | |
| DAVID REED, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON CROSS-MOTIONS TO DISMISS

The separation of an employee from employment is sometimes like a contested divorce. Here, what was once a mutually beneficial relationship has deteriorated into mutual recrimination, accusations of illegal activity, and allegations of multiple violations of statutory, tort and contract law. Faced with pleadings bristling with causes of action, each side demands dismissal of most opposing counts. The Court dismisses some counts against the president of the employer in his individual capacity but concludes the pleadings otherwise withstand the initial challenges.

## I. STATEMENT OF FACTS

### A. Procedural History

On October 15, 2010, Thayer Corporation filed a seven count complaint against David Reed, alleging violations of the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.* (Count I); the Wiretap Act (WA), 18 U.S.C. § 2510 *et seq.* (Count II); the Computer Fraud and Abuse Act of 1986 (CFAA), 18 U.S.C. § 1001 *et seq.* (Count III); unlawful interception of wire and oral communications in violation

of 15 M.R.S. § 711 (Count IV); fraud (Count V); invasion of privacy (Count VI); and breach of fiduciary duty (Count VII). *Compl.* (Docket # 1). Mr. Reed answered and counterclaimed against Thayer Corp. and its president, Daniel Thayer, alleging that he is owed back wages, that the conduct underlying Thayer Corp.'s allegations was undertaken in good faith to recover those wages, that Thayer Corp. made threats and filed suit in retaliation, and that Thayer Corp.'s actions would "dissuade a reasonable worker from reporting unlawful activity" (Counterclaim I); that Thayer Corp. violated Maine's Wage Payment Statute, 26 M.R.S. §§ 621-A, 626 (Counterclaim II), violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (Counterclaim III), breached their contract (Counterclaim IV), and violated the Maine Whistleblower Protection Act (MWPA), 26 M.R.S. § 831 *et seq.*, and the Maine Human Rights Act (MHRA), 5 M.R.S. § 4551 *et seq.* (Counterclaims V and VI). *Answer and Third-Party Compl. Against Daniel Thayer* (Docket # 7) (*Answer and Third-Party Compl.*).

Along with his Answer, Mr. Reed moved to dismiss the Complaint and to stay the case. *Mot. to Dismiss and Stay Pending Completion of Maine Human Rights Commission Proceeding* (Docket # 8) (*Def.'s Mot.*). Thayer Corp. and Mr. Thayer responded with their own motion to dismiss and opposition to Mr. Reed's motion. *Thayer Corp. and Daniel Thayer's Mot. to Dismiss Certain Countercls. and Third-Party Claims.* (Docket # 12) (*Pl.'s Mot.*); *Opp'n to Def.'s Mot. to Dismiss* (Docket # 14) (*Pl.'s Opp'n*). Mr. Reed responded to Thayer Corp. and Mr. Thayer's motion and replied to Thayer Corp.'s response. *Opp'n to Mot. to Dismiss Certain Countercls.*

*and Third-Party Claims* (Docket # 15) (*Def.'s Opp'n*); *Reply to Opp'n to Mot. to Dismiss* (Docket # 16) (*Def.'s Reply*). Thayer Corp. and Mr. Thayer replied to Mr. Reed's opposition to their motion. *Reply to Reed's Opp'n to Thayer Corp. and Daniel Thayer's Mot. to Dismiss Certain Countercls. and Third-Party Claims* (Docket # 17) (*Pl.'s Reply*).

### B. The Dispute

This case presents a heated row between Thayer Corporation and its former Chief Financial Officer (CFO), David Reed. Neither side disputes that on July 16, 2010, Mr. Reed's employment ended. *Compl.* ¶ 5; *Answer and Third-Party Compl.* ¶ 5. The events surrounding Mr. Reed's departure are highly contested. Thayer Corp. says that Mr. Reed "was entrusted with the job of determining what bonuses were earned by whom" with reference to a compensation formula, but that when calculating his own bonus "he fraudulently altered the formula used." *Compl.* ¶ 9. In 2009 Thayer Corp.'s president, Daniel Thayer, questioned Mr. Reed's bonus calculation, and Mr. Reed later reduced his bonus to $11,824—an amount that Thayer Corp. alleges was still as much as $10,000 too high. *Compl.* ¶¶ 12–13.

Thayer Corp. says that later, when Mr. Reed's employment ended, beginning on July 17, 2010 and extending through at least July 23, 2010, Mr. Reed began surreptitiously forwarding emails belonging to Thayer Corp.'s Human Resources managers to his own private email address. *Compl.* ¶ 18. Thayer Corp. alleges that Mr. Reed also transferred its cellular telephone account to his personal account and that he held the account hostage until Thayer Corp. capitulated to his demand for a severance package. *Compl.* ¶¶ 22, 24.

Mr. Reed, meanwhile, views the redirection of the emails as an innocent mistake by his cellular telephone provider. Mr. Reed says that when he realized he was receiving Thayer Corp.'s emails, he contacted the company to correct the error. *Answer and Third-Party Compl.* ¶¶ 8–9. Furthermore, in addition to denying the substance of Thayer Corp.'s allegations, Mr. Reed countersued for payment of wages. According to Mr. Reed, he had an agreement with Thayer Corp., which it breached by paying him $7,121 less than the agreed $18,000. *Answer and Third-Party Compl.* ¶¶ 5–6. Mr. Reed says that when he made a written demand to Thayer Corp. for payment of the $7,121, Thayer Corp. responded "by threatening to send naked pictures of a woman allegedly found on Reed's email to his wife and pornography from Reed's computer to the general public and by filing a seven-count lawsuit against him in federal court." *Answer and Third-Party Compl.* ¶¶ 11–12.

## II.  ANALYSIS

### A.  Legal Standard

In ruling on a motion to dismiss, the Court "must assume the truth of all well-plead facts and give the plaintiff [or counterclaimant] the benefit of all reasonable inferences therefrom." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010); *accord Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009), *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). To survive a motion to dismiss, the non-moving party must allege "sufficient facts to show that he has a plausible entitlement to relief." *Shancez*, 590 F.3d at 41. (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011), the First Circuit explained the Supreme Court's recent refinements to the 12(b)(6) analysis. It advised that "a court should employ a two-pronged approach" in resolving a motion to dismiss. *Ocasio-Hernandez*, 640 F.3d at 12. First, it should identify and disregard statements in the complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted)). Second, a court should treat non-conclusory allegations in the complaint as true, "even if seemingly incredible." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951)). "If the factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949)). Legal conclusions are not entitled to the presumption of truth granted to factual allegations. *Id.* at *7. In conducting this two-pronged approach, a court should keep in mind that "evaluating the plausibility of a legal claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950)).

### B.    Mr. Reed's Motion to Dismiss and to Stay

#### 1.    Timing

The Court first addresses whether Mr. Reed's Rule 12(b)(6) motion to dismiss is untimely, mandating its dismissal without consideration of his arguments. Citing Rule 12(b), Thayer Corp. says that "[t]he Motion to Dismiss in Doc. No. 8

must be denied given that a responsive pleading (an answer and third-party complaint) has already been filed." *Pl.'s Opp'n* at 2. In reply, Mr. Reed says that the Rule "does not prohibit Reed from filing an answer simultaneously with a motion to dismiss," notes that his Answer asserted the affirmative defense of a failure to state a claim upon which relief can be granted, and quotes the Rule that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." *Def.'s Reply* at 1.

Although Thayer Corp. is literally correct that the Answer was filed before the Motion to Dismiss—the notices of electronic filing show the Answer and Motion were uploaded on August 4, 2011 at 3:45 p.m. and 3:48 p.m. respectively—the Court rejects Thayer Corp.'s punctilious view of the filing requirements as hyper-technical and wrong.

First, Mr. Reed's Answer lists as his first affirmative defense, "Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted." *Answer and Third-Party Compl.* at 7. "Thus, his so-called motion to dismiss only brought forward for hearing and decision a defense he had timely raised." *New Hampshire Motor Transp. Motor Ass'n v. Rowe*, 324 F. Supp. 2d 231, 234 n.2 (D. Me. 2004) (rejecting the argument that a post-answer Rule 12(b)(6) motion was waived under Rule 12(b) as untimely).

Second, Rule 12(h)(2), provides that a failure to state a claim upon which relief can be granted may be made by any pleading allowed under Rule 7(a), by a

motion under Rule 12(c), or at trial.[1]  Fed. R. Civ. P. 12(h)(2).  "Rule[] 12(h)(2) . . .

prolong[s] the life of certain defenses," and allows the defense of a failure to state a

claim on which relief can be granted to be made until trial.  *Kontrick v. Ryan*, 540

U.S. 443, 459 (2004) (noting that "a defense based on . . . [a] 'failure to state a claim

upon which relief can be granted,' . . . could be raised, at the latest, 'at the trial on

the merits'"); *Coyne v. City of Somerville*, 972 F.2d 440, 445-46 (1st Cir. 1992)

(finding that Rule 12(h)(2) allowed inclusion of a Rule 12(b)(6) defense that was

made in the answer to the amended complaint but was not made in the answer to

the original complaint); *New Hampshire Motor Transp. Motor Ass'n*, 324 F. Supp. 2d

at 234 n.2 (explaining that under Rule 12(h)(2), "the defense of a failure to state a

claim is timely up until trial").  *See also* 5B Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure §§ 1347 ("A defense or objection that is not

raised by motion or in the responsive pleading is waived unless it is protected by the

special provisions for the preservation of certain defenses in Rules 12(h)(2) . . . ."), §

1361 ("[T]he defense[] of . . . failure to state a claim upon which relief can be

granted, Rule 12(b)(6). . . [is] preserved from the waiver mechanism by the express

terms of subdivision (h).  Thus, motions raising any of these matters may be

---

[1] There is some authority that a post-answer motion for failure to state a claim on which relief can be granted is not, strictly speaking, a motion under Rule 12(b)(6).  *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1347 ("Technically . . . a post-answer Rule 12(b)(6) motion is untimely and the cases indicate that some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief"), § 1361 ([M]otions raising [a failure to state a claim upon which relief can be granted] . . . may be considered by the court even when interposed after the responsive pleading has been filed, although technically they no longer are Rule 12(b) motions") (3d ed. 2010).  The Court need not consider the precise taxonomy of Mr. Reed's motion; whatever its label, it is timely.

considered by the court even when interposed after the responsive pleading has been filed . . . .") (3d ed. 2010). Under the Rules, Mr. Reed's motion is timely.

Third, Thayer Corp.'s argument betrays a picky and grudging application of the Rules. Here, the three minute difference in sequencing between the Answer and Motion caused no conceivable harm and under Rule 1, the Court is directed to apply the civil rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. The Court will not refuse to reach the merits of a substantive legal argument because of such a minuscule procedural happenstance.

### 2.    Intentional Conduct: Counts I – IV

Mr. Reed argues in favor of dismissal of Thayer Corp.'s computer access claims (Counts I – IV), focusing on the "intentional" conduct of each of the counts. *Def.'s Mot.* at 2-6. According to Mr. Reed, "Thayer Corporation does not allege any 'facts' that meet the intentional conduct standard necessary for a violation of these statutes." *Id.* at 4. Mr. Reed views Thayer's Complaint as generally setting forth "legal conclusions couched as 'facts,'" and dismisses as "insufficient as a matter of law" Thayer's allegation that Mr. Reed received emails intended for the HR manager. *Id.* at 4-5.

The Court first reviews Thayer Corp.'s Counts I – IV and their "intentional conduct" requirements. Counts I and II allege Mr. Reed's knowing and intentional access of Thayer's email system in violation § 2707 of the SCA and §§ 2510 through 2520 of the WA. *Compl.* at 6-8. In 1986, Congress amended the WA and the SCA with its passage of the Electronic Communications Privacy Act, Pub. L. No. 99-508,

100 Stat. 1848 (1986) (codified as amended in scattered sections of 18 U.S.C.). Recommending passage of the Act, the Senate Judiciary Committee reflected on the meaning of "intentional":

> As used in the Electronic Communications Privacy Act, the term "intentional" is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective. An "intentional" state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective. The intentional state of mind is applicable only to conduct and results. Since one has no control over the existence of circumstances, one cannot "intend" them.

S. Rep. No. 99-541, at 22 (1986). The point of the amendment "was to underscore that inadvertent interceptions are not a basis for criminal or civil liability." *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003). Accordingly, "[a]n act is not intentional if it is the product of inadvertence or mistake." *Id.*

Thayer's Count III alleges that Mr. Reed "accessed a protected computer at Thayer" without authorization in violation of § 1030 of the CFAA. *Compl.* ¶ 40. Thayer Corp. does not specify the subsections under which its allegations fall, but based upon the language of the Complaint, the Court gathers that Thayer is alleging violations of subsections (a)(2)(C) and (5)(A), (B) and (C), which allow recovery where the defendant:

> (2) intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains— . . .
>
> (C) information from any protected computer; . . .
>
> (5) (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(2)(C), (5)(A)–(C).

The statue does not define "intent." However, the Senate Judiciary Committee, considering an amendment in 1986 that changed the scienter requirement in § 1030(a)(2) from "knowing" to "intentional," justified the change for two reasons:

First, intentional acts of unauthorized access—rather than mistaken, inadvertent, or careless ones—are precisely what the Committee intends to proscribe. Second, the Committee is concerned that the 'knowingly' standard in the existing statute might be inappropriate for cases involving computer technology. . . . [The "knowingly"] standard might not be sufficient to preclude liability on the part of those who inadvertently 'stumble into' someone else's computer file or computer data. . . . The substitution of an 'intentional' standard is designed to focus Federal criminal prosecutions on those whose conduct evinces a clear intent to enter, without proper authorization, computer files or data belonging to another. Again, this will comport with the Senate Report on the Criminal Code, which states that "intentional' means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective.'

S. Rep. No. 99-432 at 5-6 (1986). The Committee's Report further explained that "[t]he new subsection 1030(a)(5) to be created by the bill is designed to penalize those who intentionally alter, damage, or destroy certain computerized data belonging to another," and that its "'intentional' standard is the same as that employed in" in subsection 1030(a)(2). *Id.* at 10. *See also United States v. Sablan*,

92 F.3d 865, 868 (9th Cir. 1996) (discussing the scienter requirement); *United States v. Morris*, 928 F.2d 504, 507-09 (2d Cir. 1991) (same).

Thayer Corp.'s Count IV alleges that Mr. Reed "intercepted and used . . . communications belonging to Thayer's human resources manager, including communications with Thayer's counsel," a violation of sections 710 and 711 of Maine's Interception of Wire and Oral Communications statute. *See Compl.* at 9. The law allows recovery of damages and attorney fees from a person who "intentionally or knowingly intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire or oral communication . . . ." or who "[i]ntentionally or knowingly uses or attempts to use the contents of any wire or oral communication, knowing that the information was obtained through interception." 15 M.R.S. §§ 710(1), (3)(B), 711. The Court regards the statutory meaning of "intentionally" as consistent with the federal analogs in Counts I – III.

Accepting as true the facts in the Complaint, and extending Thayer Corp. every reasonable inference, the Court has no trouble concluding that the Complaint alleges intentional conduct sufficient to survive Mr. Reed's motion to dismiss. Mr. Reed argues that the bulk of the allegations in the Complaint are not facts but legal conclusions, and that once those are filtered out, "[t]he only 'facts' alleged . . . are that after Reed's employment ended, he received emails intended for the HR manager, and that he promptly contacted the HR manager to let her know that he was receiving her emails." *Def.'s Mot.* at 4. He argues that the Complaint fails to make any allegations that "Reed knowingly or intentionally, or with the intent to

defraud, hacked into [Thayer Corp.'s] server, circumvented any firewalls or security, inserted or executed any program which attacked its server, or somehow accessed emails using a username or password that does not belong to him." *Def.'s Mot.* at 4. The Court disagrees.

Thayer's allegations go far beyond merely parroting the statutory language of intent. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that to survive a motion to dismiss a party must offer more than "[t]readbare recitals of the elements of a cause of action"). The Complaint alleges that after his termination, Mr. Reed intercepted, read, deleted and forwarded emails from Thayer's human resources director. *Compl.* ¶ 14. It explains the manner by which Mr. Reed was able to misappropriate the emails. *Id.* ¶ 8 ("As part of Thayer management, he created and set up the password system for Thayer's computers . . . .") It lists the digital location of the interception. *Id.* ¶ 15 ("Some emails he intercepted while on the server or in transit to the HR manager's email inbox and other emails he read and/or transferred from her inbox, after they had already been received in her inbox"). It lists the dates and times certain emails were taken. *Id.* ¶¶ 16–19 (July 17, 2010 at 2:29 a.m., 2:32 a.m., and 2:33 am; July 23, 2010, at 4:56 p.m., 5:06 p.m., and 5:12 p.m.; and July 25, 2010 at 4:22 p.m). It lists the content of emails taken. *Id.* ¶ 17 ("an email with a jpg photo entitled 'Brenda.jpg'"). Finally, it alleges that Mr. Reed knew of discussions regarding his severance package, information that only could have been obtained from the human resources manager's emails. *Id.* at 22. Assuming the truth of these allegations, Mr. Reed could not have

unintentionally done any of these things; each requires the intent to access, intercept, and use Thayer's email system without authorization, causing harm. *See* 18 U.S.C. §§ 2701, 2707; 18 U.S.C. §§ 2511, 2520; 18 U.S.C. § 1030; 15 M.R.S. §§ 710, 711.

### 3. Prohibited Actor and Aggrieved Party: Count I

Mr. Reed says that Thayer's Count I "is further deficient in failing to allege facts demonstrating that Reed is covered by the described categories of prohibited actors or that it is an aggrieved party within the meaning of the SCA." *Def.'s Mot.* at 5. The Court is not sure what to make of Mr. Reed's assertion that he does not fall within the categories of prohibited actors under the SCA. The statute's language is broad and liability attaches to "whoever" intentionally accesses an electronic communication service facility without authorization. 18 U.S.C. § 2701. Regardless of whether this language has any limits, Mr. Reed's actions place him squarely within the statute's focus. *See United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005) (noting that a defendant alleged to have diverted and copied emails from an on-line retailer before delivering them to the retailer's subscribers appeared to fall under § 2701(a)). Mr. Reed does not argue that his conduct falls into one of the exceptions identified in section 2701(c).

Mr. Reed cites *Statewide Photocopy Corp. v. Tokai Financial Services, Inc.*, 909 F. Supp. 137 (S.D.N.Y. 1995), and characterizes it as holding that the plaintiff failed to state a cause of action under the SCA where he had not alleged that the defendant was a computer hacker. *Def.'s Mot.* at 5. The case is inapposite. The statute does not limit liability to "hackers." Indeed, the *Statewide* Court concluded

that the complaint was deficient not because it failed to make such an allegation but because it alleged the defendant accessed its own facility rather than the plaintiff's. *See* 909 F. Supp. 137 at 145. *See also In re Intuit Privacy Litigation*, 138 F. Supp. 2d 1272, 1276 (C.D. Cal. 2001) (explaining that *Statewide Photocopy* was distinguishable because "[u]nlike the plaintiff in *State Wide*, Plaintiffs are not alleging that Defendant accessed Defendant's computers; Plaintiffs are alleging that Defendant accessed Plaintiffs' computers"). There is no such deficiency here; Thayer alleges Mr. Reed's unauthorized access of information on Thayer's computer system.

In challenging Thayer's status as "an aggrieved party within the meaning of the SCA," Mr. Reed quotes § 2707's "authoriz[ation of] a cause of action for 'providers' and 'subscribers' to an electronic communications service." *Def.'s Mot.* at 5. Mr. Reed's truncated quotation of the statute omits the portion applicable here. Section 2707 additionally provides a cause of action for "any . . . other person aggrieved by any violation in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind . . . ." 18 U.S.C. § 2707. Section 2711 incorporates by reference the definitions in 18 U.S.C. § 2510, one of which explains that "'person' means any . . . individual, partnership, association, joint stock company, trust, or corporation.'" Thayer Corporation falls under this definition of "person," and it has also properly alleged it is an "aggrieved" person, claiming damages "in excess of $5,000, including for efforts and overhead trying to stop [Mr. Reed's] access to Thayer's computer system, lost work time and the cost of

14

attorneys' fees contacting the police and the FBI, payment to an IT professional to block Reed's continued unauthorized access." *Compl.* ¶ 25.

#### 4.  Mr. Reed's Use and Knowledge:  Count II

Turning to Count II, Mr. Reed says that the Complaint is deficient for "failing to allege that Reed used information from an intercepted communication to his advantage and in failing to allege sufficient facts concerning the circumstances of the alleged interception such that Reed could, with presumed knowledge of the law, determine that the interception was prohibited." *Def.'s Mot.* at 5-6.  The Court disagrees on both points.  As to the former—use of the information—the Complaint alleges that that Mr. Reed conditioned his relinquishment of Thayer's cellular and email accounts upon a severance package that included more than one month of severance pay.  *Compl.* ¶¶ 20, 22.  The Complaint also alleges that Mr. Reed possessed information on Thayer's internal discussions of his severance package, and that Mr. Reed could only have learned of this information by reading Thayer's human resources manager's email.  *Compl.* at 22.

Regarding Thayer's failure to allege that Mr. Reed knew that the interception was prohibited, Mr. Reed cites 18 U.S.C. § 2511(1)(a), which attaches liability to "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  Mr. Reed also cites *Williams v. Poulos*, 11 F.3d 271 (1st Cir.

1993).[2]  The Court assumes that Mr. Reed draws support from *Williams'* discussion

of the knowledge requirement in § 2511:

> It is settled that a person has not committed a disclosure or use
> violation under Title III unless s/he "knew or had reason to know that
> the interception [by which the information which was disclosed or used
> had been obtained] itself was in violation of Title III."  In other words,
> "knowledge or reason to know of the illegality is an element of the
> offense.  Thus, in a civil action, a plaintiff must demonstrate "1) the
> information used or disclosed came from an intercepted
> communication, and 2) sufficient facts concerning the circumstances of
> the interception such that the defendant could, with presumed
> knowledge of the law, determine that the interception was prohibited
> in light of Title III."

11 F.3d at 284 (citations omitted).

Although *Williams* frames the knowledge requirement generally, referring to

all of Title III (the portion of the Omnibus Crime Control and Safe Streets Act of

1968 under which 18 U.S.C. §§ 2510-2521 is found), the Court's statements were

directed only to § 2511(1)(c), (d), not to subsection (a).  *See Williams*, 11 F.3d at 283

(citing 18 U.S.C. § 2511(1)(c) and (d)); *Enockson v. State of Iowa Third Judicial Dist.*

*Juvenile Ct. Servs.*, No. C97-4095-MWB, 1999 WL 33656965, at *10 (N.D. Iowa Aug.

17, 1999) (citing *Williams* when discussing the knowledge requirement of 18 U.S.C.

§§ 2511(1)(c) and (d)).  Subsections (c) and (d) condition liability upon the defendant

"knowing or having reason to know that the information was obtained through the

interception of a wire, oral, or electronic communication in violation of this

subsection."  Subsection (a) contains no such knowledge requirement; only intent

must be proven.

---

[2] Mr. Reed does not include a pin citation or direct the Court to any particular holding in *Williams*.

The Complaint does not allege which subsection of § 2511 Mr. Reed violated. Thayer Corp.'s opposition brief intimates that its Count II is premised only upon violation of subsection (a). *See Pl.'s Opp'n* at 8. Nonetheless, even if Thayer premises liability on violation of subsections (c) and (d), the Court would still conclude that the Complaint alleges Mr. Reed's knowledge that the information was obtained through interception. In short, Thayer's allegation that Mr. Reed intentionally intercepted the emails is sufficient since the Court also presumes that Mr. Reed knows the law. *See Williams*, 11 F.3d at 284.

### 5. Fraud: Count V

Turning to Thayer Corp.'s Count V, Mr. Reed says that Thayer has not satisfied Rule 9, which requires a complaint making allegations of fraud to "state with particularity the circumstances constituting fraud . . ." FED. R. CIV. P. 9(b). The purpose of this requirement, as explained by the First Circuit, is "to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996); *J.S. McCarthy Co., Inc. v. Brausse Diecutting & Converting Equip., Inc.*, 340 F. Supp. 2d 54, 59 (D. Me. 2004). Satisfaction requires "allegations of fraud that are specific with respect to the time, place and contents of an alleged false representation." *United States v. CAP Quality Care, Inc.*, No. Civ. 05-163-P-H, 2006 WL 1030101, at *1 (D. Me. Apr. 14, 2006); *accord Doyle*, 103 F.3d at 194; *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980). "A fraud count that is almost wholly conclusory, and

lacking in specifics is too vague to meet the Rule 9(b) benchmark." *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991) (internal punctuation and citation omitted). While the Rule does not go so far "that a fraud claimant must allege all of the circumstances and evidence from which fraudulent intent might be inferred," *United States v. CAP Quality Care, Inc.*, No. Civ. 05-163-P-H, 2006 WL 1030101, at *1 (D. Me. Apr. 14, 2006); *accord Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980), the complaining party must plead a factual basis for the allegations of fraud, *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991); *Bowers v. Allied Inv. Corp.*, 822 F. Supp. 835, 837 (D. Me. 1993).

According to Mr. Reed, "Thayer Corporation has not stated with particularity the circumstances allegedly constituting fraud by Reed. It merely concludes that Reed 'fraudulently altered the [bonus] formula used . . .'" *Def.'s Mot.* at 6 (quoting *Compl.* ¶ 9). The Court disagrees. The Complaint alleges that each manager was to receive a percentage of the gross profits, to be calculated using the Incentive Sliding Scale described in the LINC Service Manager Incentive Program, that Mr. Reed was entrusted with making these calculations, and that he used an altered formula to calculate his own bonus for at least the last several years of his employment at Thayer. *Compl.* ¶ 9–12. It particularly alleges at least one instance of fraud occurring in 2009 when Thayer's President questioned the size of the bonus Mr. Reed awarded himself, after which Mr. Reed offered to reduce his bonus to $11,824 which, as alleged, was still as much as $10,000 higher than what Mr. Reed was

entitled to receive. *Compl.* ¶¶ 12, 13. The specificity and detail of the Complaint is more than sufficient to satisfy Rule 9(b). The time (Mr. Reed's 2009 calculation of his bonus and related conversation with Thayer's president), place (same), and contents (misapplication of the Incentive Sliding Scale to inflate his bonus by at least $10,000) are stated with sufficient particularity to fulfill Rule 9(b)'s protective purpose.

### 6. Invasion of Privacy: Count VI

In Maine, an Invasion of Privacy cause of action includes four distinct wrongs:

> (1)    "unreasonable intrusion upon the seclusion of another";
> (2)    "appropriation of the other's name or likeness";
> (3)    "unreasonable publicity given to the other's private life"; and
> (4)    "publicity that unreasonably places the other in a false light before the public."

*Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977) (adopting the language of RESTATEMENT (SECOND) OF TORTS § 652(A) (1977)); *Fitch v. Stanley*, No. Civ.A. CV-04-78, 2005 WL 3678033, at *1 (Me. Super. Dec. 16, 2005) (same). The Complaint alleges that Mr. Reed violated the privacy of Thayer Corp. and its human resources manager when he read emails between the human resources manager and Thayer's counsel. *Compl.* ¶¶ 62-64. It does not specify which sub-class of invasion of privacy is asserted, however only the first—unreasonable intrusion upon the seclusion of another—is plausible; there is no allegation that Mr. Reed appropriated Thayer

Corp.'s or its employee's likeness or that Mr. Reed publicized any of Thayer Corp.'s information, as is required by the latter two claims.[3]

As to the first, the Restatement explains that the tort "consists solely of an intentional interference with [a person's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." RESTATEMENT (SECOND) OF TORTS § 652B cmt. a (1977). Liability attaches "only when [the tortfeasor] has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* cmt. c. Thus, "a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion." *Nelson*, 373 A.2d at 1223. Mr. Reed says that Thayer failed in this respect, and similarly failed to allege that the intrusion would be highly offensive to a reasonable person. The Court disagrees. The comments to the Restatement explain that the invasion of privacy "may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." *Id.* cmt. b. By example, the Restatement says that where "A taps B's telephone wires and installs a recording device to make a record of B's conversations[,] A has

---

[3] The Court assumes but does not decide that a corporation may state a claim for unreasonable intrusion. *But see Am. State Ins. Co v. Capital Assocs. of Jackson Cnty.*, 392 F.3d 939, 943 (7th Cir. 2004) (Explaining that "businesses lack interests in seclusion"); *Coll. of Charleston Found. v. Ham*, 585 F. Supp.2d 737, 753 (D.S.C. 2008) (Stating that "[m]ost jurisdictions to have considered the issue . . . have held that corporations may not bring suit for invasion of privacy," and citing cases from Indiana, Connecticut, and New Jersey).

invaded B's privacy." *Id.* In light of the Restatement's pronouncement that both opening private mail and tapping and recording telephone conversations would be an invasion of privacy, the Court concludes that the misappropriation of private emails could be similarly tortious. The Complaint alleges that Mr. Reed appropriated and read emails between Thayer's human resources manager and its counsel. *Compl.* ¶ 22. A jury could reasonably find this internal electronic correspondence was private and Mr. Reed's intrusion into them highly offensive.

### 7. The MHRC Proceedings

Mr. Reed says he filed a Charge of Discrimination with the Maine Human Rights Commission (MHRC) on November 3, 2010, based upon his allegations that Thayer "responded to Reed's good faith demand for payment of wages by threatening to send pictures of a naked woman from Reed's computer to Reed's wife, publicizing pornography allegedly on Reed's computer, [and] threatening to file and then filing a frivolous lawsuit against Reed." *Def.'s Mot.* at 8. The Court denies the motion to stay.

In his Motion to Dismiss, Mr. Reed makes the bare assertion that he filed a Charge of Discrimination with the MHRC. Mr. Reed provided no other information about the status of the charge: whether the MHRC has begun an investigation, whether the MHRC has found reasonable grounds to believe that unlawful discrimination occurred, whether the MHRC has entered into conciliation with Thayer and the outcome of the conciliation, or whether the MHRC has filed suit on his behalf. *See* 5 M.R.S. § 4612. In short, the Court is left with an open timeframe and no hint as to when the proceedings might conclude. Moreover, Mr. Reed makes

no claim of prejudice absent a stay. His "decision to raise an independent, though related charge before a state agency, under a different statute should not delay the disposition of [the action before this Court]." *Rhoades v. Camden Nat'l Corp.*, No. CV-07-117-B-W, 2008 WL 375250, at *1 (D. Me. Feb. 11, 2008) (denying a stay pending MHRC proceedings).

### C. Thayer Corp. and Mr. Thayer's Motion to Dismiss

#### 1. Failure to Pay Wages (Counterclaim Count II) and Breach of Contract (Counterclaim Count IV) against Mr. Thayer:

Thayer Corp. and Mr. Thayer (collectively, "Thayer") argue in favor of dismissal of Mr. Reed's Counterclaim Counts II and IV against Mr. Thayer individually. Counterclaim Count II alleges a failure to pay wages under 26 M.R.S. §§ 621-A and 626. *Countercl.* at 9. In Thayer's view, this Counterclaim should be dismissed 1) because "[t]here are no allegations about anything that Daniel Thayer did," 2) because Thayer Corp., not Mr. Thayer, was Mr. Reed's employer, and 3) because Mr. Reed has not alleged that Mr. Thayer was "subject to coverage under the state wage and hour laws." *Pl.'s Mot.* at 1. Counterclaim Count IV alleges breach of contract. *Countercl.* at 10. In Thayer's view, this Counterclaim should be dismissed because "the claim does not allege that there was any contract between Reed and individual Daniel Thayer" or that "Daniel Thayer individually breached any contract." *Pl.'s Mot.* at 3.

Mr. Reed failed to respond to Thayer's arguments concerning dismissal of Counterclaim Counts II or IV against Mr. Thayer, and he has therefore waived any

challenge to dismissal of Counts II and IV against Mr. Thayer individually.[4]  *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned") (internal punctuation and citations omitted); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or forever hold its peace" (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (internal quotation marks omitted)).  The Court dismisses Counts II and IV as against Daniel Thayer.

Even if Mr. Reed had responded to Thayer's arguments, his failure to allege that Mr. Thayer—as opposed to Thayer Corp.—was his employer is fatal to Count II.  Similarly, his failure to allege a contract between Mr. Thayer and himself is fatal to Count IV.

Regarding Count II, Maine's Wage Payment Statute contemplates actions against employers.  *See* 26 M.R.S. § 626-A ("Any *employer* is liable to the employee or employees for the amount of unpaid wages and health benefits") (emphasis supplied).  Mr. Reed alleges that Thayer Corp., not Mr. Thayer, was his employer. *Answer and Third-Party Compl.* at 8.  Mr. Reed gives the Court no reason to ignore the distinct identities of Mr. Thayer, the individual, and Thayer Corp., the corporation.  *See Spickler v. Dube*, 644 A.2d 465, 468 (1994) ("When corporate form

---

[4] The Court is not at all clear that Mr. Reed is seeking relief against Mr. Thayer personally in Counts II, III, IV, and V.  *Answer and Third-Party Compl.* at 9-11.  If he is, he does not say it.  By contrast, in Count VI, Mr. Reed expressly seeks judgment against Thayer Corporation and Daniel Thayer.  *Id.* at 12.  If he is not seeking relief, it would have been more polite to respond and express no objection to this part of the motion, rather than remain silent and cause needless time and effort.

has been properly adhered to . . . the fact that the interest of a closely-held corporation and its proprietors are usually identical should not abrogate the corporation's distinct legal identity for purposes such as taxation, regulation, and liability"). Mr. Thayer's status as Thayer Corp.'s president is not sufficient to hold him individually liable for conduct attributed to Thayer Corp. *See Mowles v. Predictive Control Systems, LLC*, Nos. Civ.A. CV-02-355, Civ.A. CV-02-356, 2002 WL 31546164, at * 2 (Me. Super. Oct. 22, 2002) (refusing to pierce the corporate veil to find majority shareholder liable on section 626-A claim).

Similarly, Mr. Reed alleges an agreement with Thayer Corp. but none with Mr. Thayer. *Answer and Third-Party Compl.* at 8. One cannot breach a contract to which he is not a party. *See County Forest Products, Inc. v. Green Mountain*, 2000 ME 161, ¶¶ 41-42, 758 A.2d 59, 69. In the absence of an allegation that he had a contract with Mr. Thayer, Mr. Reed has not stated a claim for breach of contract against Mr. Thayer individually.

### 2. FLSA Retaliation: Count III

Mr. Reed's Counterclaim Count III alleges a violation of § 215 of the FLSA. *Answer and Third-Party Compl.* at 10. In his view, the alleged violation was his "good faith demand for payment of wages," to which Thayer Corp. responded "by threatening to send naked pictures of another woman to his wife and by filing this lawsuit against him." *Def.'s Opp'n* at 2. Thayer argues for dismissal, asserting that "[Mr.] Reed has not identified any complaint about a violation of federal wage law that he filed with his employer . . . [and] he has failed to identify any actual action

that either Thayer Corporation or Daniel Thayer individually took against him," and that, in any event, Mr. Reed cannot point to any personal harm. *Pl.'s Mot.* at 2. Mr. Reed counters that the courts have construed the FLSA's complaint clause liberally to give "protection to activities that are not specifically enumerated in the statute in keeping with the Supreme Court's view of the remedial nature of the FLSA." *Def.'s Opp'n* at 1.

Section 215 provides in relevant part:

> [I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . .

29 U.S.C. § 215(a)(3). "The elements of a retaliation claim under the FLSA require, at a minimum, a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." *Claudio-Gotay v. Becton Dickinson Caribe, Ltd*, 375 F.3d 99, 102 (1st Cir. 2004).

The parties' arguments center around three points: first, whether a former employee can recover under the FLSA; second, whether Mr. Reed ever made a complaint under the FLSA; and third, whether Mr. Reed was subject to an "adverse employment action." Turning to the first issue, the Court concludes that Mr. Reed's status as a former employee is not fatal to his claim. "The central aim of the [FLSA] was to achieve, in those industries within its scope, certain minimum labor standards" such that employees could secure their "just wage deserts under the Act." *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Congress

and the courts have highlighted the remedial purpose of the Act. Thus, the term "employee" was "given what Senator Black described on the floor of the Senate as 'the broadest definition that has ever been included in any one act.'" *Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)) (internal quotation marks omitted). Similarly, the Supreme Court directed that the Act be interpreted to maximize the Act's reach, explaining:

> [T]hese provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 597 (1944) (assessing whether underground travel by coal miners constituted compensable work under the FLSA, the Supreme Court), s*uperseded by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, *as recognized in IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). *See also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947) (noting that "[t]his Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within the employer-employee category" (internal quotation marks and citation omitted)); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1334 (2011) (ruling that a complaint could be made under the FLSA either in writing or orally because the allowance of an oral complaint "would provide broad rather than narrow protection to the employee" (internal quotation marks omitted)).

The First Circuit, following the Supreme Court's lead, has emphasized the need to interpret that FLSA to maximize its protective umbrella. *See McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 58 (1st Cir. 2005) (ruling that the term "seamen" does not include "water transportation work" because such a construction would "undercut the FLSA's purpose"); *Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983) (noting that despite the numerous revisions to the FLSA, "Congress has never contradicted the [Supreme] Court's broad, 'economic reality' interpretation" to determine the scope of the employment relationship, and ruling accordingly that a corporate officer was liable as an "employer" under the FLSA).

The issue here is whether a former employee's FLSA claim can be sustained where his complaint was made after his employment ended. The First Circuit has not ruled on this precise issue. Mr. Reed cites the Sixth Circuit case of *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 142-43 (6th Cir. 1977), which concluded:

> [i]n view of the broad purposes and clear policies of the Fair Labor Standards Act, and cognizant of the practicalities of enforcement of the Act, we reject the narrow reading urged by appellees and hold that a former employee, though voluntarily separated from his employer, is protected from discrimination by his former employer under 29 U.S.C. § 215(a)(3).

Thayer observes that in *Dunlop* "the [complaining] employee was still an employee when he made his complaint about federal wage violations [whereas] Reed had no complaint about wages until he left." *Pl.'s Reply* at 2. However, the Fourth Circuit later extended *Dunlop's* reasoning to former employees who make FLSA complaints after their employment ends. In *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008), the Fourth Circuit reasoned that it would be an "unfortunate anomaly"

"if an employee's underlying FLSA claim could be brought after he quit, but the employee's protection from retaliation ended when the employee stepped beyond the employer's doorstep."

The Court agrees with *Darveau*. The action giving rise to Mr. Reed's complaint—the alleged non-payment of wages—arose while Thayer Corp. still employed him. Given the legislative and judicial consensus that the FLSA be construed broadly, the Court concludes that an after-termination complaint is not necessarily fatal to a claim under the FLSA where the action giving rise to the complaint arose while the complainant was still an employee. FLSA protections would be significantly diminished if an employer could violate federal wage laws with impunity by showing the employee the door before he complains.

Citing the "filed any complaint" language of § 215(a)(3), Thayer's second FLSA argument is that Mr. Reed did not make a complaint under the FLSA. The First Circuit explained that "[t]his circuit, although not requiring an employee to file a formal complaint with a court or agency to receive FLSA protection, does require an employee to take action beyond mere 'abstract grumblings.'" *Dlaudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 103 (1st Cir. 2004). The Court must proceed "on a case-by-case basis [to] analyze the facts to inquire whether the communications to the employer were sufficient to amount to a 'filing of a complaint' as required by the FLSA." *Id.*

In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), the Supreme Court recently addressed this very provision. The *Kasten* Court

addressed whether the phrase "filed any complaint" extended to oral complaints. *Id.* at 1329. After resolving that the text alone "cannot provide a conclusive answer," the Court turned to an analysis of the congressional objective in enacting this provision. *Id.* at 1333. The Court asked:

> Why would Congress want to limit the enforcement scheme's effectiveness by inhibiting use of the Act's complaint procedure by those who would find it difficult to reduce their complaints to writing, particularly illiterate, less educated, or overworked employees?

*Id.* The *Kasten* Court concluded that extending this language to oral complaints was consistent with the FLSA's basic objectives. *Id.* at 1333-35.

At the same time, the Supreme Court acknowledged that "the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation." *Id.* at 1334. "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335.

Here, Mr. Reed alleges that he had a "written agreement with Thayer Corporation which provided for payment of wages to Reed in the amount of $18,000." *Countercl.* ¶ 5. He says that Thayer "breached the above agreement, failing to pay Reed wages in paying Reed $7,121 less than the amount due." *Id.* ¶ 6. After his employment ended, Mr. Reed says he "made a written demand upon Thayer Corporation for payment of wages in the amount of $7,121." *Countercl.* ¶ 10. He claims Thayer retaliated by "threatening to send naked pictures of a woman

allegedly found on Reed's email to his wife and pornography from Reed's computer to the general public and filing a seven-count lawsuit against him in federal court." *Id.* ¶ 12. Since the FLSA protects employees with certain wage and hour standards, 29 U.S.C. §§ 206, 207; *Kasten*, 131 S. Ct. at 1329 ("The [FLSA] sets forth employment rules concerning minimum wages, maximum hours, and overtime pay"), the Court concludes Mr. Reed's allegation is sufficient to place Thayer on notice that he was claiming that Thayer failed to pay him wages to which he was entitled. As alleged, Mr. Reed's written demand goes beyond "abstract grumblings" and makes a direct claim for payment from his former employer.

It is true that Mr. Reed does not allege that he informed Thayer that he was entitled to the wages based on any statutory right. But to make an FLSA claim, it is not necessary for an employee to cite the FLSA or even that he is aware that he is making an FLSA claim. *See Johnson v. Advertiser Co.*, No. 2:09-CV-924-MEF, 2011 U.S. Dist. LEXIS 33236, *14 (M.D. Ala. Mar. 28, 2011) ("Even though Johnson may not have mentioned the FLSA by name in any of his internal complaints, this does not disqualify his statements from being considered protected activity"); *Deeley v. Genesis Healthcare Corp.*, No. 10-1242, 2011 U.S. Dist. LEXIS 32123, *7 (E.D. Pa. Mar. 25, 2011) (finding that a request for a meeting to discuss why the employee's time card had been altered placed the employer on fair notice). Even though the language of the written demand is not before the Court, Mr. Reed has alleged the time, place, and manner of his FLSA complaint and he has sufficiently alleged the notice element to survive a motion to dismiss.

Thayer's third argument is that Mr. Reed failed to allege he was subjected to an adverse employment action. Mr. Reed argues that Thayer retaliated against him by "threatening to send naked pictures of a woman allegedly found on Reed's email to his wife and pornography from Reed's computer to the general public and by filing a seven-count lawsuit against him in federal court." *Countercl.* ¶ 12. Thayer asserts that Mr. Reed points to "no actual harm he has suffered, no adverse employment action, and no reprisal actually taken." *Pl.'s Mot.* at 2. The parties cite no law on this point.

The First Circuit set forth the standard for determining whether an action is materially adverse in *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996). The *Blackie* Court said the determination "requires a case-by-case inquiry" and "must be cast in objective terms." 75 F.3d at 725. Nevertheless, the inquiry is subject to "some degree of generalization" in that "[t]ypically, the employer must either (1) take something of consequence from the employee, say by discharging her, reducing her salary, or divesting her of significant responsibilities or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Id.* (internal citations omitted).

This formulation leaves unanswered whether adverse employment action must be related to employment. The Court turns to retaliation provisions in other contexts for guidance. *See Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII, ADEA, ERISA, and FLSA as standing *in pari passu* and

endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another").  In the Title VII retaliation context, the Supreme Court has held that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington No. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  *See also Darveau v. Detecon, Inc.*, 515 F.3d 334, 343-44 (4th Cir. 2008) (applying *Burlington Northern* standard to FLSA).  It further held that the Title VII antiretaliation provision "is not limited to employer's employment-related or workplace actions."  *Id.*  The Supreme Court reasoned that the aims of the antiretaliation provision "would *not* be achieved" if its prohibitions were limited to employment-related conduct.  *Id.* at 63.  "An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace."  *Id.*

The Court applies the Supreme Court's rationale to this FLSA claim. Accordingly, Mr. Reed's FLSA action is not foreclosed because the alleged retaliatory conduct was not directly related to his employment.  Moreover, Thayer's assertion that Mr. Reed suffered no actual harm is unconvincing.  Whether Thayer's alleged retaliatory conduct would dissuade a reasonable worker from making a FLSA complaint is a fact question that cannot be answered at this stage in proceedings.  Moreover, other courts have found that threats and lawsuits may constitute adverse action under the FLSA. *See Soler v. G & U, Inc.*, 690 F.2d 301 (2d Cir. 1982) ("threats of retaliation are also prohibited by the provision, as are

efforts to obtain withdrawal of FLSA claims by threats of retaliation"); *Jackson v. McKesson Health Solutions LLC*, No. Civ.A. 03-11177-DPW, 2004 WL 2453000, at *7 (D. Mass. Oct. 29, 2004) ("[u]ndoubtedly, threats of retaliation are also prohibited by [sec. 215]"); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343-44 (4th Cir. 2008) (finding district court erred in dismissing section 215 complaint where a former employee alleged his former employer retaliated against his FLSA complaint by filing a lawsuit against the former employee). Given this authority and the need to engage in a case-by-case inquiry involving the expectations of a reasonable worker, the Court will not find as a matter of law that Thayer's alleged conduct was not an adverse action under the FLSA.

Mr. Reed does not challenge that Thayer's contention that the FLSA claim against Mr. Thayer individually should be dismissed. As such, and for the reasons justifying dismissal of Count II against Mr. Thayer, the Court dismisses Count III against Mr. Thayer individually.

### 3. The Maine Human Rights Commission Whistleblower Claims

Mr. Reed's Counterclaim Counts V and VI allege violations of the Maine Whistleblower Protection Act, 26 M.R.S. § 831 *et seq.*, and the Maine Human Rights Act, 5 M.R.S. § 4551 *et seq. Countercl.* at 11. The factual allegations underlying those claims mirror the FLSA claim.

### a. MHRC Claims Against Daniel Thayer

Thayer Corp. argues that, whatever the outcome of its other arguments in favor of dismissal, at minimum Daniel Thayer should be dismissed from Counts V

and VI because "individual or personal supervisor liability is not available under the federal and state statutes at issue here." *Pl.'s Mot.* at 5–6, 7. (citing *Miller v. Hall*, 245 F. Supp. 2d 191, 192 (D. Me. 2003)). The Court agrees. "The federal district court in Maine has consistently applied federal precedent to reject the notion of individual liability under the MHRA." *Me. Human Rights Comm'n v. Coffee Couple LLC*, No. 1:10–cv–00180–JAW, 2011 WL 2312572, at *7 (D. Me. June 8, 2011); *accord Gouch v. Caldwell v. Fed. Express Corp.*, 908 F. Supp. 29, 36 (D. Me. 1995) (noting that "courts in this District have . . . held that the federal statutes do not authorize a cause of action against in individual supervisor"); *Martin v. Tennford Weaving Co.*, Civil No. 96-328-P-C, 1997 WL 50469, at *1–2 (D. Me. Jan. 28, 1997) (collecting cases and concluding that Title VII does not provide for individual liability of superiors); *Quiron v. L.N. Violett Co.*, 897 F. Supp. 18, 21 (D. Me. 1995) ("[T]he inclusion in the MHRA of persons 'acting in the interest of an employer,' merely ensures that respondeat superior liability can be imposed upon Maine employers for the actions of their agents"). Furthermore, Mr. Thayer's presence in this suit is not a condition for Mr. Reed's recovery. The Complaint does not allege that Mr. Thayer was acting outside the scope of his employment. Thus, Mr. Thayer's liability "even if authorized by the MHRA, would be wholly coextensive with [Thayer Corp.'s] liability." *Gouch v. E. Me. Dev. Corp.*, 172 F. Supp. 2d 221, 227 (D. Me. 2001); *accord Miller v. Hall*, 245 F. Supp. 2d 191, 194 (D. Me. 2003) ("The presence of an individual owner of a corporate defendant in a Title VII action is superfluous").

### b.       Administrative Exhaustion of the MHRA Claims

Thayer Corp. asserts that both Mr. Reed's MHRC claims must be dismissed for failure to exhaust his administrative remedies. In Thayer Corp.'s view, filing and processing a claim with the MHRC "is a prerequisite to going to court." *Pl.'s Mot.* at 3-4, 6. Mr. Reed concedes he has not exhausted his administrative remedies with the MHRC on Counts V and VI. *Answer and Third-Party Compl.* at 12; *Def's Mot.* at 1; *Def's Opp'n* at 4.

Under Maine law, Mr. Reed's failure to exhaust administrative remedies does not require that those Counterclaims be dismissed, but it does significantly limit the remedies he may recover. The MWPA and the MHRA do not contemplate separate whistleblower causes of action. Rather, the MHRA provides a cause of action to persons aggrieved by violations of the MWPA. *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051, 1053. *See also Tripp v. Cole*, 425 F.3d 5, 9 n.4 (1st Cir. 2005) ("Although the MWPA itself provides no private right of action, complainants may after appropriate administrative process, file a civil action under the MHRA"); *Daigle v. Stulc*, 1:09-cv-353-JAW, 2011 U.S. Dist. LEXIS 68676, *128 n.106 (D. Me. Jun. 27, 2011); *Roussel v. St. Joseph Hosp.*, 257 F. Supp. 2d 280, 285 (D. Me. 2003); *Stanley v. Hancock County Comm'rs*, No. Civ. A. CV-02-23, 2003 WL 21958202, at *1 (Me. Super. Aug. 6, 2003) ("The MHRA claim is not independent but rather is the conduit for the WPA claim"), *aff'd*, 2004 ME 157, 864 A.2d 169. The MWPA allows employees alleging a violation of section 833 to bring a complaint with the MHRC. 26 M.R.S. § 834-A. However, that is not the only means of pursuing a whistleblower action, as 5 M.R.S. § 4621 allows any

person "who has been subject to discrimination" to "file a civil action in the Superior Court." Compliance with section 834 is not a prerequisite to filing pursuant to section 4621. *See Palesky v. Town of Topsham*, 614 A.2d 1307, 1310 (Me. 1992) ("An alleged violation of the [Whistleblower Protection] Act may be brought before the Maine Human Rights Commission pursuant to 26 M.R.S.A. § 834-A or directly to the Superior Court. 5 M.R.S. § 4621").[5]

Nevertheless, Mr. Reed's failure to exhaust his administrative remedies significantly limits his potential remedies. 5 M.R.S. § 4622 prohibits a plaintiff from recovering attorney fees, civil penal damages, compensatory damages, or punitive damages unless he "alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the [MHRC]" and the MHRC has taken some final action on the administrative charge. *See Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942, 944–45 ("Before a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish that she first brought a claim before the [MHRC]"); *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir. 2002); *Walton v. Nalco Chemical Co.*, 272 F.3d 13, 20 (1st Cir. 2001) ("Maine law allows neither damages nor attorney fees unless the plaintiff

---

[5] Courts in the First Circuit have intimated in dicta that MWPA claims are subject to an exhaustion requirement. *See Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir. 2002) (stating that "[l]ike Title VII, the MHRA requires that a plaintiff file a discrimination claim at the agency level before proceeding to court"); *McGlauflin v. RCC Atlantic Inc.*, 269 F.R.D. 56, 58 (D. Me. 2010) (recognizing that "the First Circuit has interpreted 5 M.R.S. § 4622(1)(C) as requiring the plaintiff to 'plead [] the requisite MHRC filing'"); *Chaloult v. Interstate Brands Corp.*, No. 02-249-P-C, 2003 WL 21803319, at *21 n.66 (D. Me. Aug. 6,, 2003) (stating that [a]lthough non-compliance with section 4622(1) technically results only in the forfeiture of certain remedies, the loss of those remedies has been held sufficient to moot a plaintiff's case"). Those decisions did not reach the issue of whether exhaustion is a pre-requisite to filing a claim. In view of *Palesky*, the Court concludes that an employee has the option of proceeding through the MHRC or directly to litigation, but the decision to go directly to court limits the scope of the remedy.

'alleges and establishes' that the MHRC has taken final action on the administrative charge or issued a right-to-sue letter"); *McGlauflin v. RCC Atlantic Inc.*, 269 F.R.D. 56, 58 (D. Me. 2010).

Mr. Reed seeks a variety of remedies under Counts V and VI. *Answer and Third-Party Compl.* at 12. To the extent he seeks attorney fees, civil penal damages, and compensatory and punitive damages, those counts are barred because he filed in this Court prior to the MHRC taking some final action; however, those counts are not barred to the extent he seeks other remedies. Because Counts V and VI are not totally barred for failure to exhaust administrative remedies, the Court considers whether they state a claim upon relief can be granted.

### c.    Count V

Turning to Count V, the Court acknowledges that Thayer has raised a complicated issue, but the Court concludes that Mr. Reed has stated a claim upon which relief can be granted. Like a FLSA claim, to prove the elements of a MWPA claim, "a plaintiff must demonstrate: (1) that he was engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that a causal nexus exists between the activity and the adverse action." *LePage v. Bath Iron Works*, 2006 ME 130, ¶ 19, 909 A.2d 629, 635-36. The parties dispute whether a person may engage in protected activity and suffer adverse employment action after the termination of the employment relationship.

Thayer argues that Mr. Reed's claim must fail because he can point to no protected action he took while an employee of Thayer and no action taken by Thayer

"regarding his employment." *Pl.'s Mot.* at 4–5. Mr. Reed responds that "[w]hether the [M]WPA covers former employees who complain about violations of federal and state wage laws remains an open question in light of the Supreme Court's decision in *Burlington Northern.*" *Def.'s Opp'n* at 5. But he argues that the Court should apply the *Burlington Northern* standard to the MWPA and find that Thayer's conduct may have dissuaded a reasonable worker from engaging in protected conduct. *Id.* at 5-6 (citing *Burlington Northern*, 548 U.S. at 68).

Although section 4572 of the MHRA is the conduit for MWPA actions, *see Stanley v. Hancock County Comm'rs*, 2003 WL 21958202, at *1, courts have consistently applied the language of section 833 of the MWPA to the elements of the cause of action. *See Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶¶ 9–11, 13 A.3d 773, 775–76. *Currie v. Industrial Sec., Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400, 403 *LePage v. Bath Iron Works*, 2006 ME 130, ¶ 21, 909 A.2d 629, 636; *Stanley v. Hancock County Com'rs*, 2004 ME 157, 864 A.2d 169; *DiCentes v. Michaud*, 1998 ME 227, ¶ 21, 719 A.2d 509, 516. Notably, Maine courts have defined "adverse employment action" in accordance with language in section 833 that says that, "[n]o employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: . . . ." *See LePage*, 2006 ME 130, ¶ 23, 909 A.2d at 636-37; *DiCentes*, 1998 ME 227, ¶ 18, 719 A.2d at 515. Courts have suggested that this language means adverse employment action must affect existing employment. For example, in *DiCentes*, the Maine Supreme Judicial Court upheld the trial court's

finding that an employer's refusal to recommend an employee for future employment was not an adverse employment action under the MWPA because it "did not affect the compensation, terms, conditions, location, or privileges of her then existing employment." 1998 ME 227, ¶ 18, 719 A.2d at 515. Similarly, in *LePage*, the Maine Supreme Judicial Court held that an employer's threat to fight an employee in court was not an adverse employment action under the MWPA where it "did not threaten [the employee]'s employment or its terms." 2006 ME 130, ¶ 23, 909 A.2d at 636-37. These statements raise doubt as to whether a former employee can suffer adverse employment action under the MWPA, suggesting that an employer's conduct is not actionable if not related to a person's then-existing employment.

Raising further doubt is the Supreme Court's reasoning in *Burlington Northern*. In holding that adverse action under Title VII's antiretaliation provision includes more than employment-related or workplace actions, the *Burlington Northern* Court observed linguistic differences between Title VII's substantive antidiscrimination and antiretaliation provisions:

> [W]ords in the substantive provision—"hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee" explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the antiretaliation provision.

*Burlington Northern*, 548 U.S. at 62. Similar limiting words appear in the MWPA, and the *DiCentes* and *LePage* Courts focused on those words in narrowly construing "adverse employment action." 26 M.R.S. § 833; 1998 ME 227, ¶ 18, 719 A.2d at 515;

2006 ME 130, ¶ 23, 909 A.2d at 636-37. Recognizing parallel language, this Court previously interpreted the MWPA's adverse employment action element under the same standard as Title VII's substantive antidiscrimination provision rather than its antiretaliation provision. *See Puno v. Mount Desert Island Hosp.*, Civil No. 06-106-B-W, 2007 WL 1875830, at *10 n.12 (D. Me. Jun. 28, 2007).

At the same time, the *Burlington Northern* Court relied on an analysis of the antiretaliation provision's statutory purpose in addition to its analysis of the statutory language. The statutory purpose analysis suggests that a broader category of employer conduct should be actionable under the MWPA. The *Burlington Northern* Court observed that Title VII's substantive antidiscrimination and antiretaliation provisions serve different purposes. 548 U.S. at 63. Whereas the antidiscrimination provision "seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status," "[t]he antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* The Court concluded that Congress needed only to eliminate employment-related discrimination to accomplish the first purpose, but it also reasoned that the antiretaliation provision's goals would not be achieved "by focusing only upon employer action and harm that concern employment and the workplace." *Id.* It observed that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the

workplace," and concluded that "[a] provision limited to employment related actions would not deter the many forms that effective retaliation can take." *Id.* In the *Burlington Northern* Court's view, these variant purposes justified the antiretaliation provision's "broader protection." *Id.* at 66–67.

The MWPA is an antiretaliation provision rather than a substantive antidiscrimination provision. *See Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 1, 13 A.3d 773, 773 (characterizing MWPA claim as one for "retaliatory discharge") *Blake v. State*, 2005 ME 32, ¶ 5, 868 A.2d 234, 237 (characterizing MWPA action as "a claim of unlawful retaliation"); *Spinney v. Lane Const. Corp.*, No. CV-07-154-B-W, 2008 WL 4381920, at *7 (D. Me. Sept. 24, 2008) (concluding that the MWPA and Title VII's antiretaliation provision "are analyzed under the same legal standard"). As such, the same justifications the *Burlington Northern* Court identified for the Title VII antiretaliation provision's broad protection apply to the MWPA and these protections would be hollow if an employer were free to exact retaliation against whistleblowers outside of employment. The *Burlington Northern* opinion, therefore, cuts both ways; its linguistic analysis supports a limited application of the MWPA while its statutory purpose analysis supports a broad interpretation of the MWPA.

The ambiguity does not end there. Maine courts have adopted the language of section 833 with regard to all three elements of an MWPA action even though section 4572, which is the conduit for an MWPA action, defines adverse employment

action differently than section 833.[6]  Section 833 limits adverse employment action to discharging, threatening, and otherwise discriminating "against an employee regarding the employee's compensation, terms, conditions, locations or privileges of employment;" section 4572 has a broader scope, defining unlawful employment discrimination as "to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions, or privileges of employment or any other matter directly or indirectly related to employment" because of an employee's protected activity.  5 M.R.S. § 4572.  The clause, "any other matter directly or indirectly related to employment," contemplates a broader scope of employer conduct that could be considered adverse employment action.  It is uncertain how this language applies to MWPA claims, but since section 4572 is the provision providing a right of action to whistleblowers, *Costain*, 2008 ME 142, ¶ 6954 A.2d at 1053, the Court is reluctant to view it as surplusage.

Amidst this ambiguity, the Court will not foreclose a broad category of cases by deciding that a former employee cannot engage in protected activity and suffer adverse employment action.  Without such a categorical limitation, the Court concludes that Mr. Reed's Count V allegations are sufficient even if the limiting language in section 833, and associated with Title VII's antidiscrimination provision, is applied.  His complaint to Thayer related to wages he claimed by statute and contract.  Any retaliatory response to such a complaint potentially

---

[6] There is no mystery surrounding the adoption of the language in section 833 for the definition of protected activity, as section 4572 expressly incorporates that definition.  5 M.R.S. § 4572 (recognizing a cause of action for an employer's retaliation against conduct "protected under Title 26, chapter 7, subchapter 5-B" "unlawful employment discrimination").

relates to employee compensation as it could dissuade an employee or former employee from agitating for wages owed, and Thayer's conduct—threatening to release photos from a company computer and filing a lawsuit based on Mr. Reed's alleged misuse of company computers—is not wholly divorced from the employment relationship between Mr. Reed and Thayer. Accordingly, the Court will not conclude as a matter of law that Thayer's allegedly retaliatory response to Mr. Reed's complaint was not related to "compensation, terms, conditions, location, or privileges of employment." *See* 26 M.R.S. § 833.

### d.    Count VI

Mr. Reed's second WPA claim alleges that Thayer Corp. terminated him for complaining in 2010 "to Thayer and Celine Gauthier, HR Manger," regarding Thayer Corp.'s allegedly unlawful practice of sending its "injured employees for treatment at . . . a facility which did not employ licensed physicians." *Answer and Third-Party Compl.* at 11-12. Thayer Corp. argues, first, that "Reed's Counterclaim identifies no law or rule that was allegedly violated and alleges no violation of any such law or rule," thus failing to satisfy a central element of a WPA claim that the claim involve a violation of a law or rule. *Pl.'s Mot.* at 6. Second, Thayer Corp. says that Mr. Reed did not "identify, and allege, that he was subject to an action adverse to employment." As proof, Thayer Corp. points to Mr. Reed's Answer which says in response to Thayer Corp.'s Complaint paragraph 5, that Mr. Reed admits that "[o]n July 16, 2010, his position was eliminated and he was let go." Mr. Reed responds that "he reported what he reasonably believed to be a violation of law by Thayer Corporation, . . . is not required to cite the statute he believes Thayer Corporation

has violated," but directs the Court to 39-A M.R.S. § 206 which provides an employee right to "reasonable and proper medical, surgical, and hospital services, nursing, medicines, and mechanical, surgical aids, as needed, paid for by the employer." *Def.'s Opp'n* at 6-7.

Turning to Thayer Corp.'s first point—that the Complaint "identifies no law that [Mr. Reed] believes was broken or what made such referrals 'illegal'"—Thayer Corp. cites no law identifying such a requirement and the Court is unaware of any. Moreover, such a requirement would be at odds with the First Circuit's observation that "[n]either state nor federal law requires that the reported condition, activity, or practice actually *be* unsafe or illegal; under either scheme, an employee's reasonable belief that it crosses the line suffices, as long as the complainant communicates that belief to this employer in good faith." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261-62 (1st Cir. 1999) (emphasis in *Higgins*). Thus, Mr. Reed need not have identified in his Complaint what law he believes was violated since all that is required is his good faith belief "that it crosses the line" when he complained to the employer—not whether such a belief was legally correct. Mr. Reed's Complaint alleges that "Defendant believed in good faith" that sending injured employees to a facility without licensed physicians was "unlawful." *Answer and Third-Party Compl.* ¶¶ 29–30. Assuming the truth of all of the facts in Mr. Reed's Counterclaims, and giving him the benefit of all reasonable inferences, these allegations are sufficient to survive a motion to dismiss.

Similarly, the Court concludes that Mr. Reed's Complaint sufficiently "identfi[ied] and allege[d], that he was subject to an action adverse to employment." *Pl.'s Mot.* at 6. Thayer Corp. points to Mr. Reed's Answer which says in response to Thayer Corp.'s Complaint paragraph 5, that Mr. Reed admits that "[o]n July 16, 2010, his position was eliminated and he was let go." Mr. Reed's admission does not alter the Court's conclusion. The admission does not logically exclude the possibility that he was "let go" in retaliation for his complaint and, in any event, if it exists at all, any meaningful distinction between being "let go" and "terminated" is overly subtle—particularly at this stage where the Court must give Mr. Reed the benefit of all reasonable inferences.

## III. CONCLUSION

The Court DENIES David Reed's Motion to Dismiss and Stay Pending Completion of Maine Human Rights Commission Proceeding (Docket # 8). (*Def.'s Mot.*). The Court GRANTS in part and DENIES in part Thayer Corporation and Daniel Thayer's Motion to Dismiss Certain Counterclaims and Third-Party Claims (Docket # 12); the motion is granted to the extent that it seeks dismissal of Counterclaim Counts II, III, IV, V and VI against Daniel Thayer and is otherwise denied.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 11th day of July, 2011